## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY BEVINS,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-02012** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **K. KAUFFMAN, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On November 2, 2020, pro se Plaintiff Rodney Bevins ("Plaintiff"), who is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Superintendent K. Kauffman ("Kauffman") and Superintendent's Assistant and Grievance Coordinator Connie Green ("Green"). (Doc. No. 1.) Presently before the Court is Defendants' motion to dismiss (Doc. No. 13) Plaintiff's complaint. Plaintiff filed his brief in opposition to the motion to dismiss on January 28, 2021. (Doc. No. 16.) Upon review of the filings, the Court concludes that it is unnecessary to wait for Defendants' reply brief before ruling upon the motion to dismiss. For the following reasons, the Court will grant Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Summary of Plaintiff's Complaint

Plaintiff alleges that since March 2020, inmates housed at SCI Huntingdon have "been exposed at a high rate to the [COVID-19] virus because of the conditions of the prison." (Doc. No. 1 at 1.) Plaintiff avers that there is "[n]o [v]entilation," which has "led to over 200 positive cases and 5 deaths." (Id.) According to Plaintiff, "over 54 staff members have tested positive." (Id.) Plaintiff maintains that Defendant Kauffman "allows his staff to come to work without the

correct [personal protective equipment ("PPE")]."  (Id.)  He states that the gym is being used as a "make shift hospital" and that staff pass out meals and mail without using gloves and with their masks "down off of their faces."  (Id. at 2.)  Plaintiff avers that he and other inmates are "locked down roughly 23 to 22 hours a day because of the failure of [Defendant] Kauffman to get a handle [on] this virus."  (Id.)  Plaintiff filed a grievance regarding these issues on October 11, 2020; Defendant Green dismissed it as untimely, stating that the grievance "was not submitted within 15 working days after the events upon which claims are based."  (Id. at 2-3.)  Based upon the foregoing, Plaintiff alleges violations of his Eighth Amendment rights.  (Id. at 4.)  Plaintiff seeks declaratory relief and damages, as well as injunctive relief in the form of a transfer, a single cell, and an order directing staff to use the correct PPE and to use "gloves at all times when dealing with inmates."  (Id. at 5.)

> **B.**     **Summary of the Department of Corrections ("DOC")'s Response to COVID-19**

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic.  See COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed Jan. 28, 2021 7:06 a.m.).  In-person visitation has been suspended since March 13, 2020.  See id.  "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. See id.  The DOC has provided inmates with disposable masks and "strongly encourage[s] inmates" to use them.  See id.  Moreover, inmates "are being provided materials to clean their cell[s] daily.  Materials will be provided to them on a daily basis."  See id.  Institutions are conducting town hall meetings with inmates "to review sanitation guidelines and COVID-19 information for awareness."  See id.  Correctional Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates.  See id.  As of January 28,

2021, 968 inmates at SCI Huntingdon have been tested for COVID-19.  237 inmates have tested positive, 218 inmates have recovered, 134 inmates are pending recovery, and seven (7) have died.  See id.

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility.  No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu."  See id.  Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use."  See id.  Daily updates to are provided to all staff members, and PPE has been provided to all staff.  See id.  Staff members have been given "a vehicle sanitation plan explaining how to clean all vehicles," and they have been directed to clean all equipment after each shift and throughout the day.  See id.

Each institution "has plans in place for quarantine if an inmate tests positive."  See id.  All institutions have identified their vulnerable populations to keep them isolated.  See id.  All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries.  See id.  Employees are advised to stay home if they are sick.  See id.  DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home plans, maximizing parole releases, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences.  See id.

The DOC represents that medical staff have begun receiving their COVID-19 vaccines.  See id.  "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized."  See id.  All inmates will be offered the vaccine when it becomes available.  See id.  No one will be required to receive the vaccine, but the DOC will focus on "encouraging

vaccination for those inmates in the long-term care setting who are most vulnerable."  See id.

Masks will continue to be worn even after vaccine distribution begins.  See id.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.     Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

5

be subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to

vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon,

331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85

(2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United

States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West

v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Plaintiff's Complaint

Defendants assert that the Court should dismiss Plaintiff's complaint because: (1)

Defendants lack personal involvement in the alleged violations of Plaintiff's rights; and (2)

Plaintiff has failed to state a plausible Eighth Amendment claim.  (Doc. No. 14 at 2.)  The Court

considers each argument below.

#### 1.   Personal Involvement

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege

that the defendant was personally involved in the act or acts that the plaintiff claims violates his

rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck,

326 F. App'x 97, 100 (3d Cir. 2009).

### a.      Defendant Kauffman

Plaintiff avers that Defendant Kauffman, as the Superintendent, manages day-to-day operations at SCI Huntingdon.  (Doc. No. 1 at 1.)  He maintains that Defendant Kauffman knows that there is no ventilation and that if COVID-19 "made [its] way in here it would be bad."  (Id.) Plaintiff further asserts that Defendant Kauffman "allows his staff to come to work without the correct PPE."  (Id.)  He suggests that Defendant Kauffman's staff pass out mail and meals without gloves and with their masks down.  (Id. at 2.)  Overall, he asserts that Defendant Kauffman has failed "to get a handle [on] this virus."  (Id.)

It appears that Plaintiff seeks to proceed against Defendant Kauffman based upon his supervisory position as Superintendent at SCI Huntingdon.  Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  See Iqbal, 556 U.S. at 676.  The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the

injury resulted from the policy or practice."  See Merring v. City of Carbondale, 558 F. Supp. 2d

540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

  In the instant case, Plaintiff's complaint fails to set forth a plausible supervisory liability

claim against Defendant Kauffman.  With respect to Plaintiff's concerns about the ventilation

system, the complaint is devoid of facts suggesting that Defendant Kauffman was personally

aware of any deficiencies and failed to rectify them.  Moreover, Plaintiff fails to allege facts

indicating that Defendant Kauffman personally witnessed staff members incorrectly wearing

their PPE and condoned or acquiesced in this behavior.  Likewise, there are no facts suggesting

that Defendant Kauffman directed staff members to incorrectly wear their PPE.  While

supervisors cannot encourage constitutional violations, a supervisor has "no affirmative

constitutional duty to train, supervise or discipline so as to prevent such conduct."  See

Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  The Court, therefore, agrees that

Plaintiff has failed to set forth a plausible supervisory liability claim against Defendant

Kauffman.  Accordingly, while Plaintiff's claims against Defendant Kauffman are subject to

dismissal on this basis alone, the Court will also consider whether Plaintiff has set forth a

plausible Eighth Amendment claim against him below.

    **b.**  **Defendant Green**

  With respect to Defendant Green, Plaintiff appears to assert that she is liable for

dismissing his grievance regarding COVID-19 concerns as untimely.  (Doc. No. 1 at 2-3.)

Inmates, however, do not have a constitutional right to prison grievance procedures.  See Lions

v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015).  The filing of a

grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the

response to an inmate's grievance, do not establish the involvement of officials and

8

administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

    In his complaint, Plaintiff suggests that his grievance was not untimely because "the events are still going on as I file this complaint."  (Doc. No. 1 at 2.)  While the review of grievances will not establish personal involvement in an underlying violation, several courts have concluded that a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official "is personally involved in that

violation because he is confronted with a situation he can remedy directly." See Mayo v. Oppman, No. CV 17-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), report and recommendation adopted, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); Gibbs v. Univ. Corr. Healthcare, No. CV 14-7138 (MAS) (LHG), 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); Whitehead v. Rozum, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012).  Viewing the complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff presented Defendant Green with a grievance intended to correct alleged ongoing violations.  Thus, the Court declines to dismiss Plaintiff's claims against Defendant Green on the basis that she lacked personal involvement.

## 2.    Eighth Amendment Claim

In order to state an Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015).  Conditions of confinement violate the Eighth Amendment if they, "alone or in combination . . . deprive inmates of the minimal civilized measure of life's necessities."  See id. at 347.  Such necessities include "adequate food, clothing, shelter, and medical care."  See Farmer, 511 U.S. 825, 832 (1994).

Here, Defendants do not dispute that the objective prong is met in the instant case.  See Dixon v. United States, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people").  The Court, however, agrees with Defendants that Plaintiff has

failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk

posed by COVID-19.  As noted supra, the DOC has adopted detailed preventative steps to

mitigate the risk to inmates and staff and to control the spread of COVID-19 throughout the state

correctional institutions.  The Court may take judicial notice of this information, as it is publicly

available on a governmental website.  See Vanderklok v. United States, 868 F.3d 189, 205 (3d

Cir. 2017).  A review of these steps suggests that DOC officials, including Defendants, have not

acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted

measures to safeguard the entire inmate population, including Plaintiff.

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19

pandemic, it agrees with the numerous courts throughout the nation that have concluded that

similar allegations do not support a plausible inference that officials have demonstrated

deliberate indifferent to inmates' Eighth Amendment rights.  See, e.g., Swain v. Junior, 958 F.3d

1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a

preliminary injunction on the basis that, inter alia, the plaintiffs had not demonstrated that

defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional

facility had "implemented many measures to curb the spread of the virus"); Wylie v. Bonner, No.

2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that

inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim

because he failed to allege that staff knew of and disregarded the risks posed by COVID-19);

Shokr v. LeBlanc, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding

that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because

measures were being taken to combat the COVID-19 virus); Kesling v. Tewalt, 476 F. Supp. 3d

1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to

set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); McKissic v. Barr, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation"). Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." See Wylie, 2021 WL 261280, at *6. From Plaintiff's complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" See Swain v. Junior, 961 F.3d 1276, 1289 (11th Cir. 2020). The Court, therefore, will grant Defendants' motion to dismiss (Doc. No. 13) and dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a plausible Eighth Amendment claim.

### B.      Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a

proposed amendment would be futile if the complaint, as amended, would not survive a motion

to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d

Cir. 2002).

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to

permit Plaintiff to file an amended complaint against Defendants that corrects the deficiencies

identified herein.  Plaintiff is advised that the amended complaint must be complete in all

respects.  It must be a new pleading that stands by itself without reference to the original

complaint or any other document already filed.  The amended complaint should set forth

Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal

Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions

are alleged as to which defendants and sufficiently allege personal involvement of the defendant

in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a

cognizable claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.  (Doc. No.

13.)  The Court, however, will grant Plaintiff leave to file an amended complaint.  An

appropriate Order follows.